UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RXHEAT, LLC and <br> CAMBRIDGE ENGINEERING, INC., <br>     Plaintiff(s), <br> vs. <br> THERMAPURE, INC., <br>     Defendant(s). | Case No. 4:10CV2402 JCH |

## MEMORANDUM AND ORDER

Plaintiffs RxHeat, LLC ("RxHeat") and Cambridge Engineering, Inc. ("Cambridge") (collectively "Plaintiffs") brought this action against Thermapure, Inc. ("Defendant") alleging tortious interference with prospective economic advantage, and seeking a declaratory judgment that Plaintiffs do not infringe any valid or enforceable claim of certain United States patents. (Compl., ¶ 4). Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer this cause to the Northern District of Illinois for consolidation with an action in which Defendant has sued Plaintiffs for patent infringement. (Doc. No. 9). Defendant's motion is fully briefed and ready for disposition.

### BACKGROUND[1]

RxHeat markets and sells heating products that are used in bed bug remediation, document recovery, new construction, meeting temporary heating needs, and water restoration. (RxHeat's and

---

[1] Upon consideration, the Court will deny Plaintiffs' request for jurisdictional discovery. See Autogenomics, Inc. v. Oxford Gene Technology Ltd., 566 F.3d 1012, 1021-22 (Fed. Cir. 2009). Plaintiffs thus are required only to make a prima facie showing that Defendant is subject to personal jurisdiction, and the pleadings and declarations that form the basis for the Court's background section are considered in the light most favorable to Plaintiffs. Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328–29 (Fed. Cir. 2008), cert. denied, 129 S.Ct. 2796 (2009).

Cambridge's Memorandum in Opposition to Thermapure's Motion to Dismiss or Transfer ("Plaintiffs' Memo. in Opp."), Ex. 5, Declaration of Marc Braun, ¶ 3). Cambridge is a sister company of RxHeat that sells certain products manufactured by it to RxHeat. (Plaintiff's Memo. in Opp., Ex. 6, Declaration of John H. Kramer, Jr., ¶ 4). Both Cambridge and RxHeat are organized under the laws of the State of Missouri, and both share a principal place of business in Chesterfield, Missouri. (Compl., ¶¶ 1–2).

Defendant is a California corporation located in Ventura, California. (Thermapure's Memorandum in Support of its Motion to Dismiss, or, in the Alternative to Transfer to the Northern District of Illinois, Ex. A, Declaration of David E. Hedman, ¶ 1). Defendant owns United States Patent Nos. 6,327,812 and 7,690,148. (Id., ¶ 2). David E. Hedman, the President of Thermapure, Inc., has declared that to the best of his knowledge Defendant has not entered into any agreements with any entities located in Missouri, that Defendant does not conduct business in Missouri, and that no employee of Defendant has traveled to Missouri on official business. (Id., ¶¶ 3–4). Defendant did engage in arms-length negotiations with Cambridge in July, 2008, regarding a potential exclusive supply agreement for heating equipment made by Cambridge. (Plaintiffs' Memo. in Opp., P. 10 and Exs. 7, 11). The negotiations were conducted by email and telephone, but the agreement was never consummated. (Plaintiffs' Memo. in Opp., Ex. 8; Thermapure's Reply Memorandum in Support of its Motion to Dismiss, or, in the Alternative to Transfer to the Northern District of Illinois, P. 1).

Defendant filed a patent infringement lawsuit relating to its two patents against Plaintiffs and certain other parties in the Northern District of Illinois on July 28, 2010 (the "First Illinois Action"). (Compl., ¶ 12). On December 22, 2010, Plaintiffs were dismissed from the First Illinois Action without prejudice, for improper joinder. (Id., ¶ 14; Plaintiffs' Memo. in Opp., Ex. 1). The very next day, Plaintiffs filed this declaratory judgment action. (Doc. No. 1). Twenty-three minutes later,

Defendant refiled its infringement action against Plaintiffs in the Northern District of Illinois. (Plaintiffs' Memo. in Opp., P. 4 & n.1 (describing timing)).

Defendant filed the instant motion on January 25, 2011, claiming Plaintiffs' suit against it must be dismissed for lack of personal jurisdiction. (Doc. No. 9). In the alternative, Defendant asks that the Court transfer this case to the Northern District of Illinois, for consolidation with the case of Thermapure, Inc. v. RxHeat, LLC and Cambridge Engineering, Inc., Case No. 10 C 8157. (Id.).

## **DISCUSSION**

Federal Rule of Civil Procedure 12(b)(2) authorizes Defendant to challenge the Complaint for "lack of personal jurisdiction." Because an action for declaratory judgment of noninfringement is "intimately related to patent law," the Federal Circuit law of personal jurisdiction governs. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006). Moreover, because the claim for tortious interference also is "'intimately linked to patent law', Federal Circuit law regarding due process must be applied to the question of personal jurisdiction over [Defendant] with respect to all claims." See id. at 1362 (discussing nature of claim for tortious interference).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." Avocent, 552 F.3d at 1329 (internal quotations and citation omitted). Missouri's long-arm statute extends to the bounds of the Due Process Clause. See Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334, 1344 (Fed. Cir. 2006) (citing State ex rel. K-Mart Corp. v. Holliger, 986 S.W.2d 165, 167–68 (Mo. 1999)). Therefore, the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." Avocent, 552 F.3d at 1329.

Under Federal Circuit law, personal jurisdiction exists if "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Breckenridge, 444 F.3d at 1363 (citation omitted). Defendant bears the burden of proving the third element, and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in Burger King [Corp. v. Rudzewicz, 471 U.S. 462, 476–77 (1985)]." Breckenridge, 444 F.3d at 1363 (internal quotations and citation omitted).

Plaintiffs assert Defendant has purposefully directed its activities at Missouri residents RxHeat and Cambridge in two separate ways. (Plaintiffs' Memo. in Opp., PP. 7-8). These arguments will be addressed in turn.

### 1. First Illinois Action

Plaintiffs argue that, "ThermaPure has . . . directed its activities at Missouri by suing RxHeat™ and Cambridge in the First Illinois Action." (Plaintiffs' Memo. in Opp., P. 7). Specifically, Plaintiffs note that, "[a]mong other things, ThermaPure served RxHeat™ and Cambridge with the complaint in that case and other litigation filings." (Id., P. 8). They contend that "[s]uch judicial enforcement efforts and the attendant obligations imposed by the Federal Rules and Patent Act are not 'random,' fortuitous,' or 'attenuated' contacts with Missouri and ThermaPure has no reason to be surprised at being called to court in this district." (Id. (citing Burger King, 471 U.S. at 474–76)).

In attempting to establish personal jurisdiction, Plaintiffs rightly look to Defendant's actions relating to the enforcement or defense of the validity of the relevant patents. See Avocent, 552 F.3d at 1334. The Federal Circuit has "consistently required" that a defendant have engaged in such activities for there to be specific jurisdiction over an action for declaratory judgment of

noninfringement. Id. However, Plaintiffs "ha[ve] made no allegation that [Defendant] has attempted to enforce these patents in any [Missouri] court." See id. at 1339 (emphasis added). In other words, because the First Illinois Action was not pursued in a Missouri court, it cannot subject Defendant to specific jurisdiction in Missouri. See id. ("To the extent the dissent contends that [defendant's] enforcement activities in other fora subject it to specific personal jurisdiction in [Missouri],...we respectfully disagree."). Indeed, if filing an action against a Missouri resident in an Illinois district court created specific jurisdiction in Missouri, "a defendant would automatically be subject to personal jurisdiction in a forum where it previously sued an entity that happened to conduct business in that particular state, even where the lawsuit was filed in an entirely different state." See Juniper Networks, Inc. v. SSL Servs., LLC, 2009 WL 3837266, at * 4 (N.D. Cal. Nov. 16, 2009) (describing such an argument for personal jurisdiction as making no "logical sense"), aff'd, 2010 WL 5140471 (Fed. Cir. Dec. 13, 2010) (unpublished).

    2. Negotiations With Cambridge

Plaintiffs further claim that "ThermaPure directed its business activities to this forum in arms-length negotiations with Cambridge in June 2008 regarding an agreement to purchase Cambridge heating products." (Plaintiffs' Memo. in Opp., P. 7). Plaintiffs maintain their submitted documents demonstrate the negotiations were not "related to any cease-and-desist demand by ThermaPure, but rather [involved] purely business activities." (Id.).[2] Plaintiffs rely on Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed. Cir. 1998), for the proposition that "[s]uch negotiations weigh in favor of a finding of minimum contacts." (Id.). The cited passage of Dainippon indicates that specific jurisdiction existed in California in that case because the defendant:

---

[2] As Plaintiffs implicitly recognize, under Federal Circuit law, "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not suffice to create personal jurisdiction." Avocent, 552 F.3d at 1333 (internal quotations and citations omitted).

> through its agents . . . issued threats of infringement to Dainippon in California; it licensed [its parent corporation and co-defendant] to make, use, and sell products covered by the [relevant] patent throughout the United States, and [the parent corporation] maintains sales agents in California to fulfill this purpose; and it has derived substantial licensing revenues from [the parent corporation's] California-based sales under the patent. Moreover, [defendant's] attempts to negotiate a sublicense with Dainippon in California further strengthen [defendant's] contacts with that state.

Dainippon, 142 F.3d at 1271 (citing Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995) and Genetic Implant Sys. v. Core-Vent Corp., 123 F.3d 1455 (Fed. Cir. 1997)).

Since Dainippon, the Federal Circuit has further explained the framework it employs in determining personal jurisdiction. For example, in Breckenridge the Court held that, "the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there." See Breckenridge, 444 F.3d at 1366. In Avocent, the Court stated as follows:

> While exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of "other activities" that support specific personal jurisdiction in a declaratory judgment action, the defendant patentee's own commercialization activity does not. What the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because "the federal patent laws do not create any affirmative right to make, use, or sell anything." *Leatherman Tool Group Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997). . . .
>
> In short, a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability. Thus, we hold that such sales do not constitute such "other activities" as will support a claim of specific personal jurisdiction over a defendant patentee. . . . However, based on our precedent, as discussed *supra*, if the defendant patentee purposefully directs activities at the forum which relate in some material way to the enforcement or the defense of the patent, those activities may suffice to support specific jurisdiction.

Avocent, 552 F.3d at 1335–36.

After Avocent and Breckenridge, it is clear that Defendant's commercialization, or "business activities" to use Plaintiffs' term, cannot create personal jurisdiction over Defendant in Missouri. See Autogenomics, Inc., 566 F.3d at 1020 (citation omitted) ("Our holding in *Avocent* was that only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee."). In other words, the "mere acts of . . . offering to sell . . . or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement . . . ." Avocent, 552 F.3d at 1336.[3] Thus the alleged negotiations at issue here, which did not even result in "a binding obligation in the forum," cannot, by themselves, create personal jurisdiction in this declaratory judgment action. See Breckenridge, 444 F.3d at 1364 (noting that in Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1353-56 (Fed. Cir. 2002), the Court held that Hildebrand's *attempts* to negotiate license agreements did not subject him to personal jurisdiction in the forum state). See also id. at 1366 (indicating that the "exclusive" status of the license is only relevant if such a relationship is actually entered into).

Because neither contact that Plaintiffs put forth as establishing specific personal jurisdiction over Defendant in Missouri is sufficient under the framework established by Breckenridge and Avocent, Plaintiffs cannot establish that Defendant purposefully directed its activities at residents of

---

[3] Dainippon is not to the contrary, as in that case the finding of personal jurisdiction was based on the fact that the defendant had an exclusive licensee with sales offices in the forum. See Dainippon, 142 F.3d at 1267, 1271. Therefore, personal jurisdiction existed because "the exclusive licensee (or licensee equivalent) with which [the defendant] ha[d] established a relationship [wa]s not headquartered in the forum state, but nonetheless conduct[ed] business there." See Breckenridge, 444 F.3d at 1366 (citing Genetic Implant, 123 F.3d at 1457–59)). As there exists no exclusive licensee in the instant case, Dainippon does not support a finding of personal jurisdiction. Avocent, 552 F.3d at 1336 (distinguishing the defendant's own commercialization from exclusive licensing arrangements).

the forum in the manner required in an action for declaratory judgment of patent noninfringement. Therefore, Plaintiffs cannot establish a prima facie case of specific personal jurisdiction over Defendant.[4]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Thermapure's Motion to Dismiss (Doc. No. 9) is **GRANTED**, and Plaintiffs' Complaint for Tortious Interference and Declaratory Judgment (Doc. No. 1) is **DISMISSED** without prejudice. An appropriate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Thermapure's Alternative Motion to Transfer to the Northern District of Illinois (Doc. No. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Permissive Joinder and for Leave to File a Supplemental Complaint (Doc. No. 11) is **DENIED**.

Dated this 17th day of March, 2011.

/s/ Jean C. Hamiton
UNITED STATES DISTRICT JUDGE

---

[4] In light of the Court's finding that Defendant did not purposefully direct its activities at residents of the forum, it need not consider whether Plaintiffs' claims arise out of or relate to those activities, or whether the assertion of personal jurisdiction would otherwise be reasonable and fair. See Breckenridge, 444 F.3d at 1363.